# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDWARD SCHROEDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 06 C 2915 |
| | ) |
| MINNESOTA LIFE INSURANCE CO., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Edward Schroeder has sued Minnesota Life Insurance Company to recover accidental death benefits from a life insurance policy issued to his former wife, Dianne Nicholson, of which Schroeder is the sole beneficiary. In June 2005, Nicholson died from injuries sustained in an automobile collision after she had a seizure. Minnesota Life argued that because the collision resulted from the seizure disorder, the policy did not provide coverage. It also contends that because Nicholson had previously been diagnosed with a seizure disorder, her death was foreseeable and thus was not "accidental" as required for coverage. Schroeder has moved for summary judgment. For the reasons stated below, the Court grants his motion.

### Facts

Because Schroeder has moved for summary judgment, the Court views the facts in the light most favorable to Minnesota Life and draws reasonable inferences in its favor. *See, e.g., Carreon v. Ill. Dep't of Human Svcs.,* 395 F.3d 786, 790 (7th Cir. 2005).

On June 21, 2005, while driving in Niles, Illinois, Nicholson had a seizure and pulled her

car to the side of the road. Witnesses approached her car, observed her having a seizure, and attempted to pull her from the vehicle. Before the witnesses could extricate Nicholson, she unintentionally depressed the accelerator, causing her vehicle to careen down an adjacent embankment and into a tree. *See* Pl. Ex. C.

Nicholson was pronounced dead approximately one hour later. *See* Pl. Ex. E. According to the Cook County Medical Examiner, she "died of multiple injuries due to an automobile accident. Seizure disorder was a significant underlying condition contributing to her death." Pl. Ex. F at 5.

At the time of her death, Nicholson was insured by a policy purchased from Minnesota Life of which Schroeder was the sole named beneficiary. The policy provided benefits in the event of "accidental death . . . which occurs as a result of an accidental injury." Pl. Ex. A. It defined this term as follows:

> Accidental death or dismemberment by accidental injury as used in this supplement means that your death or dismemberment results, directly and independently of disease or bodily infirmity, from an accidental injury which is unexpected and unforeseen.

*Id.* The policy contained an exclusion stating that "[i]n no event will we pay the accidental death or dismemberment benefit where your death or dismemberment results from or is caused directly by any of the following: . . . (3) bodily or mental infirmity, illness or disease . . . . *Id.*

Minnesota Life argues that Nicholson's death resulted from or was caused directly by bodily or mental infirmity, illness or disease, thus precluding coverage under the disease exclusion. Alternatively, it argues, Nicholson's death was not unexpected and foreseen, and thus was not "accidental," because it was foreseeable that driving, given her seizure disorder and prior medical history, could result in a collision and injury.

2

Minnesota Life also contends that it should be permitted to conduct additional discovery before summary judgment is considered. Specifically, Minnesota Life wants to conduct further discovery into automobile accidents involving Nicholson in October 2003 and March 2004, and it wishes to conduct further discovery into her medical history (which includes a craniotomy, brain aneurisms, and prior cocaine abuse), hoping that this will lead to evidence showing that it was foreseeable that a collision would occur if she drove an automobile and that her seizure disorder "contributed and played a role in her death." Def. Resp. at 3-4.

Schroeder does not dispute that Nicholson had a seizure disorder. He likewise does not dispute that Nicholson suffered a seizure that was an underlying condition that contributed to her death. Schroeder contends, however, that to determine the applicability of the policy's disease exclusion, only the immediate cause of death matters, which in this case was the physical injury that resulted from the collision. He also contends that Nicholson's death was accidental as the insurance policy and Illinois law define that term. Schroeder argues that none of the further discovery sought by Minnesota Life has any possibility of showing the existence of a genuine issue of material fact.

## Discussion

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Entry of summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**1.    Causation**

As noted earlier, the insurance policy provides coverage when the insured's "death . . . results, directly and independently of disease or bodily infirmity, from an accidental injury . . .," and it excludes coverage when death "results from or is caused directly by . . . bodily . . . infirmity, illness or disease." Pl. Ex. A. Minnesota Life contends that there is no coverage for Nicholson's death because she suffered from a seizure disorder that contributed to her death.

The Court does not agree. In Illinois, the concept of causation with respect to the analysis of life insurance policies is more circumscribed than in tort law. Specifically, in a case of this type, only the immediate cause of the insured's death matters. In *Russell v. Metro. Life Ins. Co.,* 108 Ill. App. 3d 417, 439 N.E.2d 89 (1982), the insured, an alcoholic, died from alcohol poisoning after consuming a lethal quantity of alcohol. His insurance policy provided coverage for persons who sustained "bodily injuries solely through accidental means." The policy excluded coverage for deaths "caused or contributed to by disease." The parties stipulated that the insured's alcoholism constituted a "disease" within the meaning of this provision.

The court in *Russell* held that the decedent's alcoholism neither caused nor contributed to his death within the meaning of the insurance policy. The court quoted "Lord Bacon's maxim, '[i]t were infinite for the law to consider the causes of causes, and their impulsions one of another; therefore, it contenteth itself with the immediate cause.'" *Id.* at 419, 439 N.E.2d at 90 (quoting *Burns v. Metro. Life Ins. Co.,* 283 Ill. App. 431, 1936 WL 4479, at *4 (1936)). The court concluded that the immediate cause of the insured's death was the lethal concentration of alcohol in his body; though his alcoholism was an underlying condition that may have led him to drink, alcoholism did not stop his heart or lungs from functioning. Because there was no evidence that the insured's alcoholism had left his body less capable of surviving the dose of

4

alcohol he had ingested, his alcoholism did not cause his death within the meaning of the insurance policy. *Id.*

*Marsh v. Metro. Life Ins. Co.,* 70 Ill. App. 3d 790, 388 N.E.2d 1121 (1979), is also instructive. In *Marsh,* the insured, a heroin addict, died after a self-administered heroin overdose. The insurance policy excluded coverage for loss "caused or contributed to by disease or bodily or mental infirmity." *Id.* at 796, 388 N.E.2d at 1126. Although this exclusion, like the one in *Russell,* arguably was broader than the one in Nicholson's policy, the court held that the insured's heroin addiction did not bring the exclusion into play. It stated that "[u]nder this contractual provision of the policy . . . we are not required to search beyond the immediate proximate cause to find other causes more remote." *Id.* at 794, 388 N.E.2d at 1125.

The court in *Marsh* also discussed an earlier Illinois decision in which the insured – not unlike Nicholson – blacked out due to a preexisting medical condition and died from a traumatic injury that he suffered when he fell due to the blackout:

> In *Sturm v. Employers' Liability Assur. Corp., Ltd.,* 212 Ill. App. 354 (1918), the insured drowned in his bathtub. The insured was covered by an insurance policy, which provided for recovery for death or injury "sustained during the term of this policy, solely and independently of all other causes through external, violent and accidental means." (212 Ill. App. at 360). The defendant-insurance company argued, among other things, that the evidence indicated that the decedent "blacked out" while in the bathroom of his home and, as a consequence, slipped or fell into the bathtub where he drowned. The defendant thus argued the insured's death resulted from "disease" rather than "accident." The court, in rejecting this argument made the following statement, 212 Ill. App. at 364:
>
>> Even though the insured were diseased and his abnormal condition led to his falling into the water and being drowned and so in a sense contributed to his death it is not the law that that contribution of disease to his death would prevent the plaintiff from recovering.

*Marsh,* 70 Ill. App. 3d at 796, 388 N.E.2d at 1126.

5

Precisely the same is true in this case. Nicholson may have had a disease – a seizure disorder – and that disease might have led to her depressing the accelerator while on the side of the road, which in turn led her to collide with the tree. That, however, does not make the seizure disorder a cause of her death within the meaning of her insurance policy. As the Court stated at the outset of this discussion, with an insurance policy term of this type, only the immediate cause of death matters, not any underlying illnesses or infirmities that might have contributed to the death by producing the conditions necessary for death to occur.

In this case, the immediate cause of Nicholson's death unquestionably was the traumatic injury she suffered when her car crashed into the tree. There is no evidence that her seizure disorder left her somehow less capable of surviving the collision or the resulting traumatic injury and, we might add, nothing in Minnesota Life's submission to suggest that further discovery possibly could lead to obtaining such evidence.[1]

**2.     Foreseeability**

Minnesota Life contends that in view of Nicholson's preexisting seizure disorder, her death in an automobile collision that resulted from a seizure was not "unexpected and unforeseen" and thus cannot be considered accidental as the insurance policy uses that term. The concept of foreseeability, like that of causation, is far more circumscribed in insurance cases than in tort jurisprudence. "[A] high threshold of likelihood [is] necessary to even raise an issue of

---

[1] On the causation issue, Minnesota Life argues that the further discovery it requests might show that Nicholson's seizure disorder contributed to her death. *See* Def. Resp. at 4. The Court has, however, assumed as much in addressing the causation issue. Minnesota Life has offered no argument or other plausible basis to believe that the further discovery it proposes might show that Nicholson's prior conditions were the immediate cause of her death or somehow made her more susceptible to the traumatic injuries that the medical examiner found *were* the immediate cause of her death.

fact as to whether an injury or death was foreseeable within the interpretation of [accidental death] policies . . . ." *Russell,* 108 Ill. App. 3d at 423, 439 N.E.2d at 93. To satisfy this high threshold, a reasonable jury must be able to find that the injury was "'the rational, natural and probable result of [an] intentional act.'" *Harrington v. New England Mut. Life Ins. Co.* 873 F.2d 166, 169 (7th Cir. 1989) (quoting *Rodgers v. Reserve Life Ins. Co.,* 8 Ill. App. 2d 542, 553-54, 132 N.E.2d 692, 697 (1956)).

In *Rodgers,* the insured person died after purposefully attempting to negotiate a sharp turn while driving at almost four times the speed limit. The court held that the degree of recklessness evidenced by the insured's knowing disregard of danger was insufficient to render his death foreseeable and thus non-accidental. *Rodgers,* 8 Ill. App. 2d at 551, 132 N.E.2d at 696. The court explained that although the insured "was careless, reckless, perhaps foolhardy . . . [h]is death was not the rational, natural and probable result of his intentional act" and was, therefore, accidental. *Id.* at 553, 132 N.E.2d at 697.

In *Taylor v. John Hancock Mut. Life Ins. Co.,* 11 Ill. 2d 227, 142 N.E.2d 5 (1957), the insured was burned to death in a fire that he and two other men set deliberately in order to collect fire insurance. The parties stipulated that the insured and the other men had willfully spread an accelerant around the home in furtherance of their plan to set fire to the building. The insured was burned to death when a pilot light in a furnace ignited the accelerant before he could leave the house. As in this case, the insurance policy in *Taylor* provided that death benefits would be paid if death resulted from "accidental means, directly and independently of all other causes." *Id.* at 228, 142 N.E.2d at 6. The Illinois Supreme Court held that the insured's death was accidental as a matter of law, stating that though the insured had intended to burn the house, he

7

did not intend the fire to start when it did.  The court stated that

> [i]n Illinois, the courts have adopted a liberal attitude in their interpretation of this common insurance provision.  In effect, "accidental means" has been held to be synonymous with "accidental result," and defined as something which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen.

*Id.* at 230, 142 N.E.2d at 6 (citations omitted).

In *Marsh,* discussed in the previous section of this decision, the insured, a heroin addict, died from a self-administered heroin overdose.  The insurer, in addition to the argument regarding causation discussed earlier, argued that the insured's death was not accidental (and thus not covered by the insurance policy) because it was foreseeable.  The court disagreed, stating that "[t]he test of foreseeability in these circumstances appears to be an objective one, phrased in terms of a contingency 'known to all sensible men as likely to follow' as a natural result of one's conduct."  *Marsh,* 70 Ill. App. 3d at 792, 388 N.E.2d at 1123.  Under this narrow definition, the court ruled, the "danger of [the] insured's death from an unintended overdose was not . . . foreseeable."  *Id.* at 793, 388 N.E.2d at 1124.

In *Harrington*, the Seventh Circuit considered a case involving an insured person who, after kidnapping and sexually assaulting a woman, fled from pursuing police in a car at a high rate of speed.  He ultimately collided with a parked car and was killed.  The beneficiary of the insurance policy sued to recover death benefits, which the insurer had declined to pay on the ground that the insured's death was not accidental.  District Judge Marvin Aspen granted summary judgment in favor of the beneficiary, and the Seventh Circuit affirmed his decision on appeal.  In holding that the insured's death was not foreseeable and was therefore accidental, the Court explained that

8

> the decedent was intentionally engaging in potentially destructive and illegal conduct, but his resulting death was unexpected and unintended. [He] was not in the exercise of reasonable care for his own safety, and the accident may have been foreseeable for the purpose of determining tort or criminal liability, but in Illinois that is not the test of foreseeability when interpreting accidental death coverage under an insurance policy.

*Harrington,* 873 F.3d at 169-70.

It is true, as Minnesota Life argues, that Nicholson had a seizure disorder – a condition that arguably made it dangerous for her to drive. The Court also assumes that due to her seizure disorder as well as the prior incidents cited by Minnesota Life in its request for further discovery, that Nicholson was *aware* that it was dangerous for her to drive. But her death from the collision that resulted from her seizure disorder was no less "unexpected and unintended" than those of the reckless driver in *Rodgers,* the arsonist in *Taylor*, the heroin abuser in *Marsh*, and the fleeing rapist in *Harrington*, all of which courts in this state found to be accidental and thus covered by insurance policies indistinguishable on this point from Nicholson's. And nothing in Minnesota Life's submission suggests that the further discovery it seeks possibly could lead to anything that would alter this conclusion.

**Conclusion**

For the reasons stated above, the Court finds that there is no genuine issue of material fact and that plaintiff is entitled to judgment as a matter of law. The Court therefore grants plaintiff's motion for summary judgment [docket no. 12]. Plaintiff's motion for extension of time was previously granted and is therefore terminated [docket no. 23]. Because plaintiff's motion did not set forth the amount he contends is due, the Court construes the motion as relating to liability only. The case is set for a status hearing on April 23, 2007 at 9:30 a.m. to address what more needs to be done to enable the case to proceed to prompt disposition.

9


MATTHEW F. KENNELLY
United States District Judge

Date: April 17, 2007